**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **CONTESSA BLANKS,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 25-00511-KD-N** |
| | ) | |
| **GULF COAST SECURITY, LLC,** | ) | |
| **Defendant.** | ) | |

# ORDER

This action is before the Court on Plaintiff Contessa Blanks's Renewed Motion for Default Judgment (Doc. 17) against Defendant Gulf Coast Security, LLC ("Gulf Coast Security"). Upon consideration, for the reasons below, the Court will **DENY** the Motion.

## I. BACKGROUND

On December 11, 2025, Blanks filed this action against Gulf Coast Security alleging violation of the Fair Labor Standards Act ("FLSA"). (Doc. 1). On February 19, 2026, Blanks applied for entry of default. (Doc. 9). She explained that she had served Gulf Coast Security's registered agent on January 22 and that Gulf Coast Security had failed to respond to her complaint by the deadline of February 12. (Id. at 2; Doc. 9-3 at 3). The Clerk entered default against Gulf Coast Security on February 20. (Doc. 10).

On February 23, Blanks filed a motion for default judgment. (Doc. 11). On April 29, the Court denied the motion, (Doc. 12), explaining that "the complaint fails to assert facts to show that Blanks is covered by the FLSA," (id. at 8). On May 11, Blanks filed an amended complaint "to cure some of the issues raised in this Court's Order of April 29, 2026." (Doc. 13 at 1). Eight days later, Blanks filed an executed amended alias summons. (Doc. 16). On July 6, Blanks filed the instant renewed motion for default judgment. (Doc. 17).

## II. LAW

"There are two steps in the default process: (1) getting the clerk to make an entry of default; and then (2) obtaining judgment on the default." Steven S. Gensler, 2 Fed. R. Civ. P., Rules and Commentary Rule 55 (2024).[1] "The core of default under Federal Rule of Civil Procedure 55 is the failure to timely file a required responsive pleading." Id. § 55.1. The Eleventh Circuit has a "strong policy of determining cases on their merits," so "default judgments are generally disfavored." Surtain v. Hamlin Terrace Found., 789 F.3d 1239, 1244–45 (11th Cir. 2015). Still, the default mechanism is necessary "so that 'the adversary process [will not be] halted because of an essentially unresponsive party.'" Perez v. Wells Fargo N.A., 774 F.3d 1329, 1337 (11th Cir. 2014) (alteration in original) (quoting H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe, 432 F.2d 689, 691 (D.C. Cir. 1970) (per curiam)). Default judgment is "warranted when there is 'a sufficient basis in the pleadings for the judgment entered.'" Surtain, 789 F.3d at 1245 (quoting Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)). But default judgment is possible only if the Court has both subject-matter and personal jurisdiction. See Oldfield v. Pueblo De Bahia Lora, S.A., 558 F.3d 1210, 1217 (11th Cir. 2009).

## III. JURISDICTION

In a previous order, the Court explained that Blanks had established subject-matter jurisdiction: "Here, federal question jurisdiction is presented on the face of the Complaint because this is a civil action brought pursuant to federal law—the FLSA." (Doc. 12 at 3). The Court also explained that "Gulf Coast Security is subject to specific jurisdiction in Alabama because (1) this lawsuit arises out of Blanks' employment in Alabama, (2) Gulf Coast Security formed in Alabama,

---

[1] The Clerk has already entered default against Gulf Coast Security, leaving only the issue of whether default judgment is now warranted.

and (3) Gulf Coast Security conducts business in Alabama." (Id. at 5). Those facts stand unchanged. But "[p]ersonal jurisdiction is a composite notion of two separate ideas: amenability to jurisdiction, or predicate, and notice to the defendant through valid service of process." Prewitt Enters., Inc. v. Org. of Petroleum Exporting Countries, 353 F.3d 916, 925 n.15 (11th Cir. 2003). Accordingly, the Court must also be satisfied that Gulf Coast Security has received notice through proper service of Blanks's amended complaint.

**A. Service is governed by Rule 4 because Blanks's amended complaint contains a new claim for relief.**

Ordinarily, service of "a pleading filed after the original complaint," including an amended complaint, is governed by Rule 5. Fed. R. Civ. P. 5(a)(1)(B). "Formal service under Rule 4 is not necessary for downstream pleadings when the court already holds power over the affected parties"; "Rule 5 is merely a way of giving notice." Steven S. Gensler, 1 Fed. R. Civ. P., Rules and Commentary § 5:3 (2026). In other words, Rule 5 applies "in circumstances where the court already has personal jurisdiction over the defendant with regard to the plaintiff's claims." Fischer v. Fed. Express Corp., 42 F.4th 366, 386 (3d Cir. 2022). "No service is required on a party who is in default for failing to appear. But a pleading that asserts a new claim for relief against such a party must be served on that party under Rule 4." Fed. R. Civ. P. 5(a)(2).

The Eleventh Circuit has addressed what constitutes "a new claim for relief" several times. See, e.g., Varnes v. Local 91, Glass Bottle Blowers Ass'n of U.S. & Canada, 674 F.2d 1365 (11th Cir. 1982); Campbell v. Bennett, 47 F.4th 1362 (11th Cir. 2022). A new claim for relief arises when "the defendant would not be on notice of [the claim] via the allegations in the original complaint or the statutes charged therein." Id. at 1366. In other words, a defaulted party must be served an amended complaint if it contains a new claim that (1) was not requested in the initial complaint and (2) is not authorized by the statute cited in the initial complaint.

In Campbell, the Eleventh Circuit vacated default judgment after it concluded that the amended complaint needed to be served on the defaulted defendant. Id. at 1367. After default had been entered against a defendant, the plaintiff filed an amended complaint, id. at 1364, which for the first time requested "joint and several liability as to actual damages and profits," id. at 1367. The district court determined that the amended complaint did not contain a new claim and thus did not require service under Rule 4. Id. at 1366. The Eleventh Circuit, however, concluded that the claim for joint and several liability as to actual damages and profits "constituted a new claim for relief" for two reasons: (1) the plaintiff did not request this claim in his initial complaint, and (2) the statute cited in the initial complaint "did not put [the defaulted defendant] on notice that he could be subject to joint and several liability for actual damages and profits." Id. at 1367. The Eleventh Circuit explained that "[t]he Copyright Act provides expressly for the possibility of joint and several liability for *statutory* damages," but the provision that "provides for *actual* damages and profits[] says nothing about the possibility of joint and several liability." Id. (emphasis added).

Campbell relied on Varnes, in which the amended complaint requested attorney's fees. 674 F.2d at 1367. That request was not present in the initial complaint, and the statute under which the plaintiff sought relief did not authorize attorney's fees. Id. at 1369. Because the request was thus "based on equitable and not statutory grounds," it constituted a new claim for relief. Id.

Had Blanks not asserted a new claim for relief in her amended complaint, she would not have needed to serve it upon Gulf Coast Security. See Fed. R. Civ. P. 5(a)(2). But her amended complaint requests relief that her initial complaint did not: "Grant Plaintiff a permanent injunction enjoining Defendant, its agents, successors, employees, attorneys, and those acting in concert with Defendant and on Defendant's behalf from continuing to violate the FLSA." (Doc. 13 at 7). 29 U.S.C. § 216(b)—the penalty provision cited in Blanks's initial complaint—"says nothing about

the possibility of" the permanent injunction sought in the amended complaint. See Campbell, 47 F.4th at 1367. In other words, this claim for relief is "based on equitable and not statutory grounds." See Varnes, 674 F.2d at 1369. Consequently, this Court can exercise personal jurisdiction—and thus default judgment is possible—only if Blanks has properly served her amended complaint upon Gulf Coast Security under Rule 4.

**B. Service was proper under Rule 4 because it is reasonable to assume that Cooley transmitted notice of the amended complaint to Landrum.**

Blanks's motion provides the details of service of the amended complaint. (Doc. 17 at 4). Blanks's process server made numerous attempts to serve Gulf Coast Security's registered agent, Patric Landrum, at his "home address where he was served with the original Complaint." (Id.). Eventually, the process server reached Gulf Coast Security's Operations Manager, Janet Cooley, who told the process server that Landrum was aware that the process server was trying to reach him. (Id. at 5). At that point, the process server visited the office address listed on Gulf Coast Security's website. (Id.). The owner of the building told the process server that "Landrum had been evicted from the space 4 months earlier," but the owner found Landrum's new address for the process server. (Id.). The process server visited the new address and served the amended complaint and amended alias summons on Cooley. (Doc. 16).

The issue is whether personal service on Cooley satisfies Rule 4's requirements for serving an unincorporated association within the United States. Under Rule 4(h)(1), service can be made (1) in compliance with the law of the state where the district court is located or where service is made, Fed. R. Civ. P. 4(h)(1)(A), or (2) "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process," Fed. R. Civ. P. 4(h)(1)(B). Blanks's renewed motion for default

judgment does not address this issue, leaving the Court to review Blanks's alleged facts and determine whether service was proper.

The Court is not satisfied that Cooley is an "agent authorized" to accept service on behalf of Gulf Coast Security. See Fed. R. Civ. P. 4(h)(1)(B). In the return of service form, the process server indicated that Cooley is designated by law to accept service on behalf of Gulf Coast Security. (Doc. 16). But Gulf Coast Security's business entity record lists Landrum, not Cooley, as its registered agent. See Gulf Coast Security LLC, Ala. Sec'y of State: Bus. Entity Recs., https://arc-sos.state.al.us/cgi/corpdetail.mbr/detail?corp=000830322 (last visited Sep. 4, 2026). Blanks has not offered any evidence to support the process server's assertion that Cooley was authorized to accept service, and that assertion standing alone does not suffice to show that Cooley was so authorized—especially in the context of default judgment. See Melton v. Wiley, 262 F. App'x 921, 923 (11th Cir. 2008) (affirming the district court's conclusion that the plaintiff failed to show that the recipient was authorized to accept service because the plaintiff "proffered nothing to support the process servicer's assertion" that the recipient was so authorized); Surtain, 789 F.3d at 1244–45 ("[D]efault judgments are generally disfavored."); Ala. R. Civ. P. 4(c)(1) committee comments to 1992 amendment ("[C]ourts should be vigilant to protect the rights of defendants when default judgments are entered on the basis of service upon an agent of the defendant.").

The Court is satisfied, however, that Cooley is "an officer, a managing or general agent" authorized to accept service on behalf of Gulf Coast Security. Fed. R. Civ. P. 4(h)(1)(B). Courts in Alabama look to federal case law to make that determination. Ala. R. Civ. P. 4 committee comments to 2004 amendment ("The phrase 'managing or general agent' is used in a majority of the states and has been interpreted in many federal cases. The intent is to adopt the majority rule of federal caselaw in interpreting the phrase 'managing or general agent.'").

Federal case law "focus[es] on the person's role and level of authority within the organization" to determine "whether a person is an officer or managing or general agent." Steven S. Gensler, 1 Fed. R. Civ. P., Rules and Commentary § 4:61 (2026). "The general rule is that a managing or general agent is someone authorized to transact all business of a particular kind at a particular place and who is 'vested with powers of discretion rather than being under direct superior control.'" Id. (quoting Bridgeport Music, Inc. v. Rhyme Syndicate Music, 376 F.3d 615, 624 (6th Cir. 2004)). "Yet even a person who is not in charge of the corporation's activities within the state still may qualify as a managing or general agent for purposes of Rule 4(h)(1)(B)" if the person "is in a position of sufficient responsibility so that it is reasonable to assume that the person will transmit notice of the commencement of the action to organizational superiors." 4A Wright & Miller's Federal Practice & Procedure § 1103 (4th ed. 2026). Overall, "the validity of service of the summons and complaint on an agent pursuant to current Rule 4(h)(1)(B) depends upon the facts in the particular case." Id.

The facts here indicate that Cooley occupied a position of responsibility sufficient to support a reasonable assumption that she transmitted notice of the amended complaint to her superiors within Gulf Coast Security. Landrum, the registered agent, was made aware of this action when Blanks served her initial complaint on him. Moreover, the process server has affied that he made plans with Landrum to serve the amended complaint on him at his residence. (Doc. 17 at 10). The process server's affidavit also indicates that Cooley told the process server that Landrum "was aware that [the process server] was trying to reach him." (Id.). Eventually, the amended complaint was served on Cooley at Landrum's new business address. (Id. at 11). It is reasonable to assume that an operations manager who was evidently in close contact with Gulf Coast Security's registered agent would have transmitted notice of service to that agent and thus to Gulf

Coast Security. Consequently, pursuant to Rule 4(h)(1)(B), service of Blanks's amended complaint upon Cooley was proper.

## IV. ANALYSIS

The standard for determining whether there is a "sufficient basis" for default judgment is "akin to that necessary to survive a motion to dismiss for failure to state a claim." Surtain, 789 F.3d at 1245. Under this standard, the court asks whether the complaint contains sufficient facts, "accepted as true, to 'state a claim for relief that is plausible on its face.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). Default judgment is warranted "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. By defaulting, a defendant is deemed to have admitted well-pleaded factual allegations, but not unsupported allegations or legal conclusions. Cotton v. Massachusetts Mut. Life Ins. Co., 402 F.3d 1267, 1278 (11th Cir. 2005).

### A. Elements of an FLSA Claim

Blanks has alleged that Gulf Coast Security violated the FLSA by failing to pay her overtime compensation. The Court denied Blanks's previous motion for default judgment because her complaint, which did not describe her duties or Gulf Coast Security's business activities, failed to demonstrate that Blanks was covered under section 207 of the FLSA. (Doc. 12 at 7–8). Blanks then filed an amended complaint "to cure some of the issues raised" in the Court's previous order. (Doc. 13 at 1). Now, Blanks moves for default judgment under her amended complaint.

Section 207 of the FLSA prohibits an employer from working an employee for more than forty hours per week "unless such employee receives compensation for his employment in excess of [forty hours] specified at a rate not less than one and one-half times the regular ratee at which he is employed." 29 U.S.C. § 207(a)(1). "To state a claim under the FLSA for unpaid wages, an

employee must allege (1) an employment relationship; (2) that the employer or employee engaged in interstate commerce; and (3) that the employer failed to pay overtime compensation and/or minimum wages." Ray v. Adams & Assocs., Inc., 599 F. Supp. 3d 1250, 1256 (S.D. Fla. 2022).

**B. Blanks has not demonstrated that she is covered by the FLSA.**

The Court's previous order explained how an employee can demonstrate individual or enterprise coverage: "To be eligible for overtime compensation under the FLSA, 'an employee must first demonstrate that he is "covered" by the FLSA' through 'individual coverage' or 'enterprise coverage.'" Guevara v. Lafise Corp., 127 F.4th 824, 829 (11th Cir. 2025) (quoting Josendis v. Wall to Wall Residence Repairs, Inc., 662 F.3d 1292, 1298 (11th Cir. 2011)). But neither Blanks's amended complaint nor her renewed motion for default judgment directly addresses whether she is covered by the FLSA through either form of coverage. The Court is thus left to examine the facts alleged in her amended complaint to ascertain whether she is covered.

The amended complaint alleges that Blanks was employed by Gulf Coast Security, which "provides security services to local business in and around Baldwin County, Alabama." (Doc. 13 at 3). "Specifically, [Gulf Coast Security] provides security of contracted properties, along with fire watch and beach patrol." (Id.). Along with Blanks, Gulf Coast Security "employed approximately 25+ Security Officers" and "provided security to Romar House, Plantation, The Dunes, Kiva Dunes, Crystal West, Gulf Tower, Edgewater, and Island Royal." (Id. at 3–4). "As a Security Officer, [Blanks] would be required to do DAR (daily activity reports) for each shift for each property." (Id. at 4). "She would have to rove to ensure constant visual on properties to help maintain the security and safety of the guests and/or properties she was assigned." (Id.). "She would also check guests' vehicles on the property by issuing parking passes." (Id.).

These alleged facts do not suffice to demonstrate that Blanks is covered by the FLSA through either individual or enterprise coverage.

**1. Individual Coverage**

The individual coverage analysis "requires us to examine the individual employee's activities." St. Elien v. All Cnty. Env't Servs., Inc., 991 F.3d 1197, 1198 (11th Cir. 2021). The employee can demonstrate that she is individually covered by showing that she is "engaged in commerce or in the production of goods for commerce." Id. (quoting 29 U.S.C. § 207(a)(1)). Blanks does not allege that her job related to the production of goods, so she must show that she was engaged in actual commerce.

> [F]or an employee to be 'engaged in commerce' under the FLSA, he must be directly participating in the actual movement of persons or things in interstate commerce by (i) working for an instrumentality of interstate commerce, *e.g.*, transportation or communication industry employees, or (ii) by regularly using the instrumentalities of interstate commerce in his work, *e.g.*, regular and recurrent use of interstate telephone, telegraph, mails, or travel.

Thorne v. All Restoration Servs., Inc., 448 F.3d 1264, 1266 (11th Cir. 2006). The sweep of commerce under the FLSA is narrower than "the full scope of [Congress's] commerce power." Guzman v. Irmadan, Inc., 322 F. App'x 644, 645 n.2 (11th Cir. 2009). Consequently, "activities merely affecting commerce" will not suffice; the FLSA "regulate[s] only activities constituting interstate commerce." Thorne, 448 F.3d at 1266. For example, service of meals to interstate railroad workers in a dining car running on the railroad's tracks does not constitute commerce. McLeod v. Threlkeld, 319 U.S. 491, 492 (1943). Railroad work itself constitutes commerce, but "employment that indirectly assist[s] the functioning of [railroads]" does not. Id. at 496–97.

In the context of the production of goods for commerce, individual coverage is extended to employees a step removed from "the physical process of the making of the goods," Kirschbaum v. Walling, 316 U.S. 517, 524 (1942), because the FLSA deems an employee to be "engaged in

the production of goods if [he] [i]s employed . . . in any closely related process or occupation directly essential to the production thereof," 29 U.S.C. § 203(j). The FLSA thus covers "employees of a security force that protects the producer's premises." Thorne, 448 F.3d at 1268. In the context of actual commerce, on the other hand, the FLSA brooks precious little wiggle room; nothing short of direct participation will do. Id. at 1266.

For example, even an employee who works at the front desk of a hotel frequented by guests from other states may not be individually covered by the FLSA. See Spears v. Bay Inn & Suites Foley, LLC, No. 19-cv-00269, 2021 WL 2445889, at *4 (S.D. Ala. June 15, 2021). "Evidence that the hotel was engaged in interstate commerce by catering to out-of-state guests does not establish that the [employee] was personally engaged in interstate commerce." Id. The employee must show "that he was engaged in interstate commerce as opposed to providing services of a local nature"; "interactions with out-of-state customers" do not alone "implicate[] interstate commerce or instrumentalities of interstate commerce." Id. The employee in Spears eventually surmounted the individual coverage hurdle by showing that he was engaged in commerce because he handled interstate phone calls, emails, and credit card transactions when guests from other states made reservations before arriving in Alabama. Spears v. Bay Inn & Suites Foley, LLC, No. 19-cv-00269, 2022 WL 3141878, at*3–4 (S.D. Ala. Aug. 5, 2022), aff'd in part, vacated in part on other grounds, 105 F.4th 1315 (11th Cir. 2024).

Blanks has alleged that her job with Gulf Coast Security entailed providing security to eight beachside condominiums in Baldwin County. Although Blanks does not say so, only a modest leap of common sense is necessary to speculate that those condominiums hosted out-of-state guests, with whom Blanks interacted when she checked their vehicles and issued parking passes to them. But, although provided for the benefit of interstate travelers, those are "services of a local nature"

that do not themselves constitute interstate commerce. See Spears, 2021 WL 2445889, at *4; Thorne, 448 F.3d at 1266. Blanks has thus failed to show that she was engaged in commerce. Consequently, she has not demonstrated that she is individually covered by the FLSA.

**2. Enterprise Coverage**

The enterprise coverage analysis turns on "an assessment of the enterprise's activities" rather than the individual employee's. St. Elien, 991 F.3d at 1198. An employer's activities trigger enterprise coverage when the employer has (1) "employees engaged in commerce," "production of goods for commerce," or "handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person," and (2) "at least $500,000 of 'annual gross volume of sales made or business done.'" Polycarpe v. E&S Landscaping Serv., Inc., 616 F.3d 1217, 1220 (11th Cir. 2010) (quoting 29 U.S.C. § 203(s)(1)(A)).

Blanks has not alleged any facts indicating that Gulf Coast Security's activities satisfy either of the criteria required to trigger enterprise coverage. Consequently, Blanks has failed to demonstrate that she is covered by the FLSA through enterprise coverage.

Absent any demonstration that she is covered by the FLSA, Blanks cannot plausibly state a claim for relief under it. Default judgment is thus not warranted.

**CONCLUSION**

Blanks renews her motion for default judgment against Gulf Coast Security. But Blanks's amended complaint still fails to demonstrate that she is covered by the FLSA. Accordingly, the renewed motion for default judgment (Doc. 17) is **DENIED**.

**DONE** and **ORDERED** this the **14th** day of **October 2026**.

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**